**UNITED STATES of America,**
**Appellee,**
v.
**Robert Edward REEB, Appellant.**
**No. 25759.**

United States Court of Appeals,
Ninth Circuit.

Oct. 27, 1970.

Rehearing Denied Dec. 10, 1970.

Bert E. Green, of Berg & Green, San Francisco, Cal., for appellant.

Coleman Bresee, David P. Bancroft, Asst. U. S. Attys., James L. Browning, U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLEY, KOELSCH and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge:

Robert Edward Reeb appeals from his conviction for refusing to submit to induction in violation of 50 U.S.C. App. § 462.

■ The Government argues that we do not have jurisdiction to entertain this appeal because Reeb was committed for a sixty-day observation and study under 18 U.S.C. § 5010(e). Such a commitment, the Government contends, does not constitute a final decision of the district court within the meaning of 28 U.S.C. § 1291.

We hold that such a commitment constitutes imposition of sentence insofar as appealability is concerned. *See* United States v. Fort, 133 U.S.App.D.C. 155, 409 F.2d 441 (1969). This court therefore has jurisdiction.

One of Reeb's defenses at the trial was that he was improperly classified I–A, because his local board, Selective Service Local Board No. 57, San Mateo County, California, was improperly constituted. Reeb asserts that the court erred in rejecting this defense.

The point involves the statutory and regulatory residence provisions governing local board membership. Title 50 U.S.C. App. § 460(b) (3) provides that each member of any local board shall reside in the county or political subdivision corresponding thereto in which such local board has jurisdiction. 32 C.F.R. § 1604.52(c) provides that local board members " * * * shall also, if at all practicable, be residents of the area in which their local board has jurisdiction."

This regulation was amended on September 2, 1970, to omit the quoted words so that now the only geographical requirement is that members of local boards reside in the county served by the board. See Executive Order 11555, 35 Fed.Reg.No.175, page 14191 (9/2/70). Since, in Reeb's case, the local board acted prior to September 2, 1970, he is entitled to the benefit of the regulation as it read prior to that date.

San Mateo County has two local boards, No. 57 and No. 58. All members of Reeb's Local Board No. 57 reside in San Mateo County. However, on several critical dates during the processing of his file, there was an insufficient quorum of these board members who lived within the geographical area assigned to that local board. No proof was offered as to whether it was "practicable" for Local Board No. 57 to have at least a quorum of members who resided within the geographical confines of that board. However, we will assume for present purposes that it would have been practicable in populous and fairly compact San Mateo County.

■■ The applicable portion of this regulation uses "shall" which is usually employed as an imperative. However, "shall" may sometimes be directory only, just as "may" may be mandatory. Wilshire Oil Company of California v. Costello, 348 F.2d 241, 243 (9th Cir. 1965). The interpretation of these words depends upon the background circumstances and context in which they are used and the intention of the legislative body or administrative agency which used them.

Here the most significant background circumstance is that the geographical provision of the regulation goes beyond what Congress thought was necessary to assure that draft boards would function in an atmosphere of "friends and neighbors." As for the context in which the critical words appear, it will be noted that the regulation links "shall" with "if at all practicable." The latter words seem more in keeping with the expression of a preference than the announcement of a command.

No clear-cut evidence of agency purpose in promulgating 32 C.F.R. § 1604.52 (c) has been called to our attention. It is entirely possible that the primary objective was not that of serving the interests of registrants, but of simplifying the functioning of draft boards. Board members must frequently assemble. The clerk of the board must often contact board members. A regulation providing that board members reside in the geographical area served by the board, "when practicable," makes sense from the standpoint of administration. But if this was the purpose we think it unlikely that the regulation was intended to be mandatory.

■ These considerations lead us to conclude that the language in question may fairly be construed as meaning "it is preferable, if circumstances permit, that members of the local boards be residents of the respective areas in which

**384**

their boards have jurisdiction." Language of this kind is directory rather than mandatory.[1]

■ If we are mistaken in this analysis and the regulation should be regarded as mandatory, we in any event think the failure to abide by the regulation did not prejudice Reeb in the administrative processing of his case, and such failure therefore does not constitute a defense to the charge. The regulation, 32 C.F.R. § 1604.52(c), does not deal with procedures closely identified with fairness and due process as in the case of a regulation providing a right to a hearing, or a right to cross-examine witnesses,[2] or a Selective Service regulation which, if followed, might have excused a registrant from induction.[3] Nor is there any contention that the failure to comply with this regulation resulted in any invidious discrimination against Reeb or a class of registrants of which he is a member.

In our opinion there is no showing of prejudice to the registrant here arising from the fact that board members live within the county but without the geographical area served by the local board. As discussed below, the reasons Reeb did not satisfy the requirements for the classification he sought are wholly unrelated to the residence of the board members, and they are reasons which would exist regardless of the place of residence of the members.

On the dual grounds that the regulation is not mandatory and that, if mandatory, non-compliance was not prejudicial in this case, we conclude that the trial court did not err in rejecting Reeb's defense based upon 32 C.F.R. § 1604.52(c).[4]

■ Reeb next contends that he was denied his constitutional right to due process of law under the Fifth Amendment, in that he was denied the right to counsel before his draft board.

Reeb asserts that a letter he wrote to his board on January 3, 1968, was a request for counsel before his draft board. In that letter he said:

"If at all possible, I would like you to make an appointment for me to see the selective service system's 'Attorney of and/or for appeals.'"

The request for an appointment with the Government Appeal Agent was not timely and was not granted.

The request of January 3, 1968, apart from being untimely, was not a request that Reeb be represented by counsel before the board. Thus no such request was denied by the board.[5]

■ Reeb argues that he should have been acquitted because there was

---

1. Two other courts of appeals have reached the same conclusion. United States v. Chaudron, 425 F.2d 605, 611 (8th Cir. 1970); Czepil v. Hershey, 425 F.2d 251, 252 (7th Cir. 1970). Contra, United States v. Cabbage, 430 F.2d 1037 (6th Cir. 1970).

2. See Vitarelli v. Seaton, 359 U.S. 535, 540, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).

3. See Oshatz v. United States, 404 F.2d 9, 11–12 (9th Cir. 1968), dealing with the failure to follow a regulation requiring an inquiry into a registrant's loyalty, and United States v. Baker, 416 F.2d 202, 204 (9th Cir. 1969), dealing with the failure to comply with a regulation specifying the order of call.

4. This determination makes it unnecessary for us to decide whether, even if the regulation is mandatory, Local Board No. 57 was at least a de facto board, the composition of which could not be questioned in

an induction prosecution. Of the three other courts of appeals which have dealt with this problem, two have held that a local board, the members of which are not all residents of the geographical area served by the board, is at least a de facto board. United States v. Chaudron, 425 F.2d 605, 611 (8th Cir. 1970); Czepil v. Hershey, 425 F.2d 251, 252 (7th Cir. 1970). Contra, United States v. Cabbage, 430 F.2d 1037 (6th Cir. 1970).

5. This court has twice recently held that a registrant is not entitled to be represented by counsel in board proceedings. See United States v. Evans, 425 F.2d 302, 304 (9th Cir. 1970); Haven v. United States, 403 F.2d 384, 385 (9th Cir. 1968). However, the question is now pending before the Supreme Court in a direct appeal from United States v. Weller, 309 F.Supp. 50 (N.D.Cal.1969), jurisdiction reserved, 397 U.S. 985, 90 S.Ct. 1118, 25 L.Ed.2d 394 (1970).

no basis in fact for the denial of his conscientious objector application. He also asserts that the induction order denied him the free exercise of his religion and the equal protection of the law. He further asserts that the denial amounted to an unconstitutional establishment of religion for it deprived him of a conscientious objector classification as a Roman Catholic opposed to the Vietnam war as unjust. We will discuss these two arguments together.

On June 12, 1967, Reeb, then classified I-A, applied for classification as a conscientious objector. His local board denied the application and retained him in I-A. Reeb took an administrative appeal. On November 20, 1967, the appeal board rejected Reeb's claim for conscientious objector status and classified him I-A.

On January 12, 1968, Reeb requested a personal interview with his local board. This was granted and the interview was held on May 13, 1968. At this interview Reeb asked that his classification be reopened. The local board decided not to reopen.

In his correspondence with the local board Reeb made a number of statements pertaining to his opposition to war on religious and moral grounds. However, many of these statements disclosed that his objections were primarily directed to *"this war,"* meaning the Vietnam war. Moreover, at his personal interview on May 13, 1968, Reeb expressed agreement with the contents of a letter from his father to the board, which he tendered at that time, to the effect that " * * * if this were another world war, my son would not hesitate to offer his services for his country." The board specifically noted this selective opposition to the Vietnam war in its final refusal to reopen Reeb's classification on May 13, 1968.

While the selective service file indicates that Reeb is a Roman Catholic, he at no time asserted before the agency that his objection to the Vietnam war was predicated upon his adherence to the doctrines of the Roman Catholic church. All he now relies upon to show that he related his objection to the Vietnam war to Roman Catholic doctrine is the statement in a letter he wrote to the board stating "the war must be stopped," and that he "feels qualified to be a pacifist." These statements provide no link between his objection to the Vietnam war and his church affiliation.

Under Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), a registrant's conscientious objection may be entitled to recognition even though it is not specifically related to religious training and belief, if it rests at least in part upon deeply held moral, ethical or religious principles as distinguished from considerations of policy, pragmatism or expediency. 398 U.S. at 342–343, 90 S.Ct. 1792. But the question remains whether a sincerely held conscientious objection, whether based upon the doctrine of a religious organization, or upon more general moral, ethical or religious principles, directed only to certain wars and not wars in general, entitled a registrant to exemption. *Welsh* did not decide this question.

It is possible that the question will be dealt with by the Supreme Court in one or both of two cases now pending before it. *See* Negre v. Larsen, 418 F.2d 908 (9th Cir. 1969), cert. grant. 399 U.S. 925, 90 S.Ct. 2256, 26 L.Ed.2d 792 (1970); and United States v. Gillette, 420 F.2d 298 (2d Cir. 1970), cert. grant. sub nom. Gillette v. United States, 399 U.S. 925, 90 S.Ct. 2236, 26 L.Ed.2d 791 (1970).

However, the *Negre* and *Gillette* decisions also involve other questions and we are not entirely certain that the Supreme Court will utilize either of the cases as a vehicle for dealing with the selective conscientious objection problem. Moreover, the first question discussed in this opinion, pertaining to the place of residence of local board members, involves a pressing problem in this circuit. The Ninth Circuit district courts are divided on that issue and there is an urgent need for a prompt resolution of the question.

Accordingly we turn to a consideration of the selective conscientious objection problem.

The conscientious objector exemption is based upon section 6(j) of the Universal Military Training and Service Act, as amended, 50 U.S.C. App. § 456(j) (1964 ed., Supp. IV). That section pertains to registrants who are " * * * conscientiously opposed to participation in war in any form." In our view one who is, for any reason, opposed only to participation in a particular war, cannot be said to be " * * * opposed to participation in war in any form."

We accordingly hold that the action of the local board in classifying Reeb I-A has a basis in fact, and does not infringe upon his constitutional rights.

*Affirmed.*